BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP
Michael J. Barrie (admitted *pro hac vice*)
Raymond H. Lemisch (RL5345)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7010 telephone
(302) 442-7012 facsimile

White Plains Center
50 Main Street, Suite 1000
White Plains, NY 10606

*Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| Empire One Telecommunications, Inc. | : 10-10987 (ALG) |
| aka EOT, | : |
| | : |
| Debtor. | : EIN: 54-1963388 |

------------------------------------------------------------x

**OBJECTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION**
**TO THE MOTION OF THE UNITED STATES TRUSTEE**
**TO CONVERT OR DISMISS THIS CHAPTER 11 CASE**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby objects to the Motion of the United States Trustee to Convert or Dismiss this Chapter 11 Case (the "Motion") pursuant to 11 U.S.C. § 1112(b), and, in support thereof, submits the Declaration of Paul Butler (the "Declaration") attached hereto as Exhibit A and states as follows:

# BACKGROUND

## I. The Debtor's Bankruptcy Case.

1. On February 25, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its business and manage its property and assets as a debtor-in-possession. No trustee, examiner or committee of creditors has been appointed in the Debtor's chapter 11 case.

2. The Debtor is a competitive local exchange carrier under the Telecommunications Act of 1996, and provides various wholesale/retail communications services, including standard voice telecommunications (local, long distance, and wireless), Internet access, and specialized data services for commercial subscribers. The Debtor serves customers in the United States, Asia, and other markets, maintains Web portals in multiple languages, and provides marketing, sales, and customer services in target markets. The Debtor's staff consists of approximately 26 employees.

3. The Debtor derives revenues from, among other sources, access billing, whereby the Debtor receives a per-minute fee for each call routed through its network. To collect these revenues, the Debtor invoices other telecommunications' providers (the "Carriers"), and obtains the Carriers' data on the number and attributes of calls routed through the Debtor's network. Debtor has multiple, ongoing billing disputes with several Carriers.

4. In light of the foregoing disputes, the Debtor was unable to fully collect outstanding receivables from certain Carriers. These disputes, combined with the economic

recession that has caused decreased phone demand and reduced customer prices and profit margins, necessitated the Debtor's Chapter 11 filing.

5. On September 23, 2010, the Debtor filed its Chapter 11 Plan of Liquidation (the "Plan") [Docket No. 74] and accompanying Disclosure Statement (the "Disclosure Statement") [Docket No. 75]. The Disclosure Statement and Plan contemplated the sale of substantially all of the Debtor's assets. At the time it filed the Plan, the Debtor anticipated confirmation prior to December 31, 2010.[1]

6. On November 1, 2010, the Debtor received an executed copy of a letter of intent from a potential purchaser (the "Stalking Horse") of substantially all of the Debtor's assets. The Debtor and the Stalking Horse currently are revising the letter of intent to further define the assets to be purchased, address confidentiality concerns, and the expected closing date on the proposed transaction.

7. Under the terms of the expected sale with the Stalking Horse, the Stalking Horse (or its designee) will purchase substantially all of the Debtor's assets in a transaction under section 363 of the Bankruptcy Code (the "363 Sale").[2] Pursuant to the Stalking Horse Agreement, the Buyer proposes to pay to the Debtor's estate the sum of $1 million and assume

---

[1] On October 27, 2010, this Court entered an Order extending the time period for confirmation of this small business through and including December 31, 2010, without prejudice to the Debtor's rights to seek further extensions. (*See* Docket No. 93.)

[2] Because the Debtor will sell its assets under section 363 of the Bankruptcy Code, the Debtor intends to amend its Plan and Disclosure Statement and will pursue plan confirmation and the 363 Sale contemporaneously . The Debtor expects to file its motion to approve the 363 Sale on or before December 15, 2010 (the "Sale Motion").

certain pre-petition and post-petition liabilities in connection with its purchase of substantially all of the Debtor's assets.

8. Upon receipt of the executed letter of intent from the Stalking Horse, the Debtor filed a motion to approve bidding and notice procedures on November 10, 2010 [Docket No. 96] (the "Bid Procedures Motion"). The Bid Procedure Motion is currently scheduled for hearing on December 1, 2010.

9. In addition, the Debtor has filed an application to retain an investment banker to assist in the sale and auction process for the Debtor's assets. Counsel for the Debtor has worked extensively with counsel for the Universal Services Administrative Company, counsel for Deutsche Telecom, and the investment banker to come to an agreement on the terms of the proposed order approving the investment banker's retention. A proposed form of agreed upon order has been filed with the Court today.

10. If approved, the relevant dates proposed under the Bid Procedures Motion are as follows:

    a. December 1, 2010 – hearing on Bid Procedures Motion;

    b. December 28, 2010 – Debtor to serve notices regarding assumption, assignment, and cure;

    c. January 7, 2011 – deadline to submits bids for the Debtor's assets;

    d. January 12, 2011 – deadline to object to cure amounts;

    e. January 12, 2011 – deadline to object to the Sale Motion;

    f. January 14, 2011 – auction;

    g. January 19, 2011 – hearing on Sale Motion; and

    h. January 31, 2011 (or earlier) – closing.

## II. The Trustee's Motion to Dismiss.

11. On October 4, 2010, the Office of the United States Trustee (the "Trustee") filed a motion to dismiss or convert this Chapter 11 case. The Trustee's only basis for filing the Motion was the alleged failure by the Debtor to pay timely its post-petition taxes.

12. In support of its Motion, the Trustee states that: (i) the data submitted in the Debtor's monthly operating reports ostensibly reflects the accrual of approximately $173,000 in post-petition tax liability, and (ii) two proofs of claim reflecting amounts owed for post-petition taxes have been filed to date.

### A. The Administrative Proofs of Claim.

13. In support of the relief requested in the Motion, the Trustee notes that two proofs of claim for post-petition administrative expenses have been filed: (i) an administrative claim filed by the New York State Department of Labor for unemployment insurance taxes in the amount of $1,271.42 (the "Unemployment Tax Claim"), and (ii) an administrative claim filed by the New York State Department of Taxation and Finance for unpaid sales and use tax in the amount of $14,390.31 (the "Sales and Use Tax Claim," and together with the Unemployment Tax Claim, the "Administrative Claims").

14. The Unemployment Tax Claim has been paid in full. (Declaration, ¶ 4.) As counsel for the Debtor stated on the record at the status conference held on October 27, 2010 (the "Status Conference"), the Debtor's unemployment taxes are paid through its payroll service. (*Id.*) The Debtor believes that this claim arose because of an error by its payroll service. (*Id.*) The Debtor does not set these rates; the Debtor's payroll service does. (*Id.*) Specifically, the payroll service withheld the unemployment tax at rates slightly lower than those required to be paid to the State of New York. (*Id.*)

15. Since the Trustee brought this issue to the attention of the Debtor, the Debtor paid this amount in full and has taken steps with its payroll service to ensure that appropriate adjustments to the withholding rates were made. (*Id.*) Accordingly, the Debtor does not anticipate any additional accruals for this type of claim.

16. In addition, the Trustee notes the Sales and Use Tax Claim in support of its Motion. As stated on the record at the Status Conference, the Debtor had not paid the amounts giving rise to the Sales and Use Tax Claim post-petition because it had submitted a request for credit or refund of sales or use tax in the amount of $18,689.76 to the New York State Department of Taxation and Finance.

17. Since the filing of the Motion, the Debtor has reached an agreement with the Department of Taxation and Finance, which resulted in a dollar-for-dollar offset against the Debtor's post-petition tax liability to New York state for sales and use tax. (*Id.* at ¶ 5.) Specifically, the resolution reached with Department of Taxation and Finance will provide as follows: (i) that the credit of $18,689.76 is valid, (ii) that the credit will be applied to offset the

Sales and Use Tax Claim in full, and (iii) that the remainder of the credit will be applied against the Debtor's liability for quarter ended August 31, 2010.[3] (*Id.*)

## B. The Debtor's Operating Reports and Accrual of Post-Petition Taxes.

18. The Trustee also argues the Debtor's bankruptcy case ought to be dismissed or converted because the monthly operating reports filed by the Debtor demonstrate increasing accruals of post-petition tax liabilities.

19. Although the operating reports do show the accrual of some post-petition tax liabilities, the amount of those liabilities are demonstrably less than those asserted by the Trustee for several reasons. First, the Operating Reports were admittedly confusing because they conflated pre-petition and post-petition tax liabilities. (*Id.* at ¶ 7.) Second, many of these types of taxes are billed monthly, but only payable quarterly or annually resulting in an accrual on the Debtor's books and records even though payment is not yet required. (*Id.*) Third, the Debtor is charged these types of taxes in jurisdictions where any of its customers' calls originate. (*Id.*) These taxes literally amount to pennies in taxing jurisdictions where only a small concentration of the Debtor's customers originate calls. (*Id.*) Because the Debtor has a policy only to pay those taxes exceeding $10.00, as is industry custom, the Debtor's balance sheet in each of its monthly operating reports reflect these accrued liabilities. (*Id.*) Finally, prior to the Petition Date, the Debtor did not employ a third party vendor to prepare its sales, use, excise and utility tax returns and coordinate payments to the dozens of jurisdictions asserting amounts due for sales and use, utility and related excise-type taxes. (*Id.*) The Debtor has since hired in the ordinary course of its business a third party vendor to prepare and process these types of tax

---
[3] The Debtor has already filed its return for this period.

returns. (*Id.*) By working with its vendor, the Debtor has now been able: (i) to identify and more accurately estimate its post petition tax liability, and (ii) to prepare returns for the relevant post petition periods, which it has begun to do (and pay). (*Id.* at ¶ 8.)

20. Given the Debtor's new ability to identify and more accurately estimate its post-petition tax liabilities and eliminate any confusion caused by conflating the pre-petition and post-petition tax liabilities, the Debtor has contemporaneously herewith filed amended monthly operating reports for May, June, July and August 2010, and its September 2010 monthly operating report. (*Id.* at ¶ 9.)

21. In consultation with the Debtor's third party vendor, it estimates that the Debtor's post-petition tax liability for sales, use, excise and utility related taxes total $90,823.19 as of September 30, 2010 (the "Estimated Post Petition Tax Liability"), not $173,070.80 as believed by the Trustee. (*Id.* at ¶ 10.)

22. Since September 30, 2010, a number of events have occurred that reduce the Estimated Post Petition Tax Liability:

   a. the Debtor has reached a resolution with the New York State Department of Finance on the Sales and Use Tax Claim that will result in a tax credit of $18,689.76, (*Id.* at ¶ 11); and

   b. the Debtor has filed returns and made payments to certain taxing authorities that total more than $15,000. (*Id.*)

23. Taking these payments and credits into account, the current accrued post-petition tax liability is approximately $65,823.19.

24. As noted at the Status Conference, the Debtor has established a separate account at Sovereign Bank to reserve funds necessary to pay these taxes. (*Id.* at ¶ 12.) The Debtor has been segregating funds and currently has $17,000 in principal in this account. (*Id.*) The Debtor intends to continue segregating funds until the segregated account equals the accrued post-petition tax liability. (*Id.*)

25. Accordingly, the cumulative effect of the Debtor's efforts show that the Estimated Post Petition Tax Liability is approximately $90,823.19, of which amount, the Debtor has segregated funds to pay or actually paid these taxes in the combined amount of $50,689.76.

## **OBJECTION**

26. The Trustee cannot meet the burden to have this case dismissed or converted. Section 1112(b) of the Bankruptcy Code allows the Court to dismiss or convert a bankruptcy case for "cause." 11 U.S.C. § 1112(b)(1). As the Trustee notes, cause can be established where a debtor has failed to pay timely taxes due and owing after the petition date. 11 U.S.C. § 1112(b)(4)(I). There are, however, exceptions to this rule. For example, a court shall not convert or dismiss a case where a debtor shows a plan will is likely to be soon confirmed, there was a reasonable justification for any alleged omission, and such omission will be cured within a reasonable period of time:

> (b)(2) The relief provided in paragraph (1) *shall not be granted absent unusual circumstances* specifically identified by the court

that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that—

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court. (emphasis supplied).

27. Accordingly, under the plain meaning of the Bankruptcy Code, a debtor's failure to comply with certain provisions, such as section 1112(b)(4)(I) of the Bankruptcy Code, do not provide automatic grounds for the dismissal or conversion of a case under chapter 11 to a case under chapter 7. *See Squires Motel, LLC v. Gance*, 426 B.R. 29 (Bankr. N.D.N.Y 2010); *In re CCT Communications, Inc.*, 420 B.R. 160 (Bankr. S.D.N.Y. 2009). Moreover, the Court has wide discretion in making the determination of whether or not to dismiss or convert the case. *In re FRGM Managing Member LLC*, 419 B.R. 576 (Bankr. S.D.N.Y. 2009).

28. The Court should deny the Trustee's Motion for several reasons. First, there is a reasonable likelihood that the Debtor will confirm a plan within a reasonable time. The Debtor has received an executed letter of intent with its Stalking Horse buyer and currently intends to consummate a 363 Sale not later than January 31, 2011. In furtherance of the 363 Sale, the Debtor has engaged an investment banker to market the Debtor's assets and, subject to Court approval of the Bid Procedures Motion, expose those assets to an auction on January 14, 2011.

As the Debtor intends to pursue plan confirmation on a parallel track with its 363 Sale, the Debtor expects confirmation to occur early in the first quarter of 2011.

29.     In addition, the Debtor has reasonable justification for not paying the amounts represented by the Administrative Claims and for the accrual of the Estimated Post Petition Tax Liability, and has made, and is continuing to make, reasonable efforts to cure the arrearages within a reasonable time. As noted above, the Administrative Claims were not paid either because of a third party error or because of a then pending tax credit application (which subsequently was granted). Also, the Debtor accrued the Estimated Post Petition Tax Liability mostly because it did not have in place a third party vendor prior to the Petition Date to monitor the applicable taxing jurisdictions, prepare the applicable tax returns, and coordinate filing and payment. Since the Petition Date, however, the Debtor has hired a third party vendor to do this and, now that the Debtor's tax liabilities have been more accurately estimated, the Debtor has aggressively implemented a plan to satisfy any deficiencies within a reasonable time.

30.     Moreover, the Trustee has not identified a single unusual circumstance that would favor dismissal or conversion.

31.     Therefore, neither dismissal or conversion of this case is in the best interests of creditors and the Debtor's estate. To the contrary, dismissal or conversion would prevent consummation of the 363 Sale, lessen the realizable value of the Debtor's assets, and ultimately result in a diminished (or zero) recovery for most parties in interest.

**[THIS SPACE INTENTIONALLY BLANK]**

WHEREFORE, the Debtor respectfully requests that the Court enter an Order: (a) denying the Motion, and (b) granting to the Debtor such other and further relief as is just and proper under the circumstances.

Dated: November 12, 2010

BENESCH FRIEDLANDER
COPLAN & ARONOFF LLP

By:    /s/ *Michael J. Barrie*
Raymond H. Lemisch (RL5345)
Michael J. Barrie (admitted *pro hac vice*)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7010 telephone
(302) 442-7012 facsimile

White Plains Center
50 Main Street, Suite 1000
White Plains, NY 10606

*Counsel for the Debtor and
Debtor in Possession*