**Exhibit A** - Copy of Proposed Plan of Reorganization

BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP
Raymond H. Lemisch (RL5345)
Michael J. Barrie (admitted *pro hac vice*)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7010 telephone
(302) 442-7012 facsimile

White Plains Center
50 Main Street, Suite 1000
White Plains, NY 10606

*Counsel for Debtor and Debtor in
Possession*


**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
In re                                  :        Chapter 11
                                       :
Empire One Telecommunications, Inc.    :        10-10987 (ALG)
aka EOT,                               :
                                       :
                        Debtor.        :        EIN: 54-1963388
-----------------------------------------------------------x
```

**EMPIRE ONE TELECOMMUNICATIONS, INC.'S
<u>SECOND AMENDED PLAN OF LIQUIDATION</u>**

# ARTICLE I
## DEFINITIONS[1]

1.01     <u>Administrative Expense Claims</u> means any right to payment constituting a cost or expense of administration of this case Allowed under sections 503(b), 507(a)(1), and 1114(e) of the Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate; any actual and necessary costs and expenses of operating the Debtor's business; any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under Sections 330 and 503 of the Code, *but excluding Post-Confirmation Expenses*, and the value of goods received by the Debtor within the twenty-day period immediately preceding the Petition Date.

1.02     <u>Allowed</u> means, with reference to any Claim, (i) any Claim against the Debtor that has been listed by the Debtor in its Schedules, as such Schedules may be or may have been amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Sections 5.08 and 5.10 hereof or such other applicable period of limitation fixed by the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or hereunder.

1.03     <u>Asset Purchase Agreement</u> means the Asset Purchase Agreement attached as an exhibit to the Sale Motion that was filed in connection with the Sale.

1.04     <u>Avoidance Actions</u> means any actions commenced, or that may be commenced, before or after the Effective Date pursuant to sections 544, 545, 547, 548, 549, 550, 551 or 553 of the Code.

1.05     <u>Ballot</u> means the forms of ballots accompanying the Disclosure Statement upon which holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

1.06     <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Southern District of New York, having jurisdiction over this chapter 11 case.

1.07     <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United

---

[1] Unless otherwise specified, all sections or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning ascribed to that term in the Code.  The rules of construction contained in section 102 of the Code shall apply to the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

States Code, as amended from time to time, applicable to this chapter 11 case, and any Local Rules of the Bankruptcy Court.

1.08    Business Day means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.09    Bid Procedures Motion means Motion of the Debtor for Entry of an Order (A) Approving Bid and Notice Procedures for the Sale of the Debtor's Assets; (B) Scheduling An Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief [Docket No. 96], filed on November 10, 2010, and subsequently approved by the Court.

1.10    Cash means legal tender of the United States of America.

1.11    Claim has the meaning set forth in Section 101(5) of the Code.

1.12    Class means any group of Claims or Equity Interests classified by the Plan pursuant to Section 1122(a)(1) of the Code.

1.13    Code means title 11 of the United States Code §§ 101, *et seq.*

1.14    Collateral means any property or interest in property of the Debtor's estate subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Code.

1.15    Confirmation Date means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order.

1.16    Confirmation Hearing means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.17    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Code.

1.18    Disclosure Statement means the disclosure statement relating to the Plan, including, without limitation, all exhibits thereto.

1.19    Disputed Claim means claims as described in Section 5.07 herein.

1.20    Distribution Record Date means the Confirmation Date.

1.21    Effective Date means the Business Day specified in Section 11.02 herein.

1.22    Equity Interest means the interest of any holder of an equity security of the Debtor represented by any issued and outstanding shares of common or preferred stock or other

instrument evidencing a present ownership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.23    Estate Property means property of the Debtor's estate as defined by Section 541 of the Code, which will vest in the liquidating Debtor, subject the Debtor's obligation to, *inter alia*, administer, liquidate and distribute the Estate Property in accordance with the terms of the Plan.

1.24    Excluded Assets means all property of the Debtor's estate under section 541 of the Code not sold pursuant to the Asset Purchase Agreement.

1.25    Final Order means an order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court on the docket in this chapter 11 case which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired.

1.26    Impaired means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Code.

1.27    Lien means a judicial lien as defined in section 101(36) of the Code; a lien as defined in section 101(37) of the Code; a security interest as defined in section 101(51) of the Code; a statutory lien as defined in section 101(53) of the Code; and any other lien, interest, charge or encumbrance.

1.28    Litigation means any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, including actions to recover Estate Property and all turnover actions under section 542 of the Code, other than Avoidance Actions, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of this chapter 11 case.

1.29    Liquidation Account means the bank account established by the Debtor on or after the Confirmation Date to hold all proceeds of the liquidation of the Debtor's estate for distribution, including funds held as part of the Post-Confirmation Reserve.

1.30    Petition Date means February 25, 2010.

1.31    Plan means this second amended chapter 11 plan of liquidation, including exhibits hereto, as the same may be further amended or modified from time to time in accordance with the provisions of the Code and the terms hereof.

1.32    Plan Supplement means the document (as may be amended, modified or supplemented) containing the exhibits referenced in the Plan and Disclosure Statement and which shall be filed no later than ten (10) days prior to the Confirmation Hearing.

1.33    Post-Confirmation Expenses means all costs and expenses incurred by the Debtor *from and after the Confirmation Date* in the course of liquidation and Plan implementation, including without limitation, professional fees and expenses, salaries, rent, utilities, and taxes.

1.34    Post-Confirmation Reserve means the amount of Cash reserved and held in the Liquidation Account for payment of Post-Confirmation Expenses disclosed in the Plan Supplement.

1.35    Priority Non-Tax Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in Section 507(a)(3), (4), (5), (6), (7), or (9) of the Code.

1.36    Priority Tax-Claims means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Code.

1.37    Pro Rata Share means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

1.38    Purchaser means the purchaser under the Asset Purchase Agreement approved by the Bankruptcy Court at the hearing on the Sale.

1.39    Sale means the sale of all or substantially all of the Debtor's assets.

1.40    Sale and Bid Procedures means the sale, bid and auction procedures set forth in the Sale Motion and/or the Bid Procedures Motion.

1.41    Sale Hearing means the hearing scheduled before the Bankruptcy Court on January 19, 2011, to approve the Sale to the Purchaser, or such other date to which the Court may continue the Sale Hearing.

1.42    Sale Motion means the Motion of the Debtor for Entry of an Order (I) Approving an Asset Purchase Agreement Between the Debtor and the Stalking Horse, or such other Purchase Agreement between the Debtor and the Prevailing Bidder; (II) Authorizing the Sale of All or Substantially All of the Assets of the Debtor Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief [Docket No. 114], filed on December 15, 2010.

1.43    Sale Documents means the Asset Purchase Agreement, the Schedule of Assumed Contracts, and any schedules, exhibits or other documents attached thereto or contemplated thereby, in each case as amended from time to time in accordance with their terms.

1.44    Schedule of Assumed Contracts means the schedule listing certain executory contracts and unexpired leases to be assumed by the Debtor and assigned to the Purchaser under or in connection with the Asset Purchase Agreement.

1.45    Schedules means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under section 521 of the Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.46    Secured Claims means a Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on property in which the Debtor's estate has an interest and is not subject to avoidance under the Code or applicable non-bankruptcy law; or (b) subject to setoff under section 553 of the Code, but, with respect to both case (a) and (b), only to the extent of the value of the assets or estate property securing any such Claim or the amount subject to setoff, as the case may be.

1.47    Unimpaired means any Claim that is not Impaired within the meaning of section 1124 of the Code.

1.48    Unsecured Claim means any Claim against the Debtor that is (i) not an Administrative Expense Claim, Priority Tax Claim, Secured Claim, Priority Non-Tax Claim, or Equity Interest, or (ii) otherwise determined by the Bankruptcy Court to be an Unsecured Claim.

1.49    U.S. Trustee Fees means all fees required to be paid by 28 U.S.C. § 1930(a)(6).

## PLAN SUMMARY

This Plan of Liquidation (the "Plan") under chapter 11 of title 11 of the United States Code (the "Code") proposes to pay creditors of Empire One Telecommunications, Inc. (the "Debtor") from the proceeds of the sale(s) of all or substantially all of the Debtor's assets, liquidation of any remaining assets of the estate, and the proceeds of Litigation and Avoidance Actions.

This Plan provides for one class of Secured Claims; one class of Priority Non-Tax Claims; one class of general unsecured claims; and one class of Equity Interests. Unsecured Creditors holding Allowed Claims will receive distributions, which the Debtor estimates at approximately five cents on the dollar. This Plan also provides for the payment in full on the Effective Date of Administrative Expense Claims and Priority Tax-Claims, unless any holder of an Administrative Expense Claim or Priority Tax-Claim otherwise agrees.

All Creditors and holders of Equity Interests should refer to Articles III through VI of this Plan for information regarding the precise treatment of their Claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and holders of Equity Interests has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.01 <u>Class 1</u>. All Allowed Claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02 <u>Class 2</u>. The claim of 55 Washington Street LLC, to the extent allowed as a Secured Claim under § 506 of the Code.

2.03 <u>Class 3</u>. All Unsecured Claims Allowed under § 502 of the Code.

2.04 <u>Class 4</u>. Equity Interests of the Debtor.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01 <u>Unclassified Claims</u>. Under section §1123(a)(1), Administrative Expense Claim, and Priority Tax Claims are not in classes.

3.02 <u>Administrative Expense Claims</u>. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on the Effective Date, or as soon thereafter as is reasonably practicable, the Debtor shall pay to each holder of an Allowed Administrative Expense Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim. The Debtor estimates that the Allowed Administrative Expense Claims will total $450,000 - $500,000.

(a) All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Confirmation Date, and (ii) shall be paid in full by the Debtor in such amounts as are allowed by the Bankruptcy Court (A) upon the date upon which the order relating to any such Administrative Expense Claim is entered, or as soon thereafter as is practicable, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Debtor.

(b) Post-Confirmation Expenses shall be paid according to terms as agreed to by the Debtor without prior approval of the Bankruptcy Court.

3.03 <u>Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, on the Effective Date, or as soon thereafter as is reasonably practicable, the Debtor shall pay each holder of an Allowed Priority Tax Claim an amount in Cash equal to the Allowed amount of such Allowed Priority Tax Claim. The Debtor estimates that the Allowed Priority Tax Claims will total approximately $200,000.

3.04    United States Trustee Fees.  All U.S. Trustee Fees will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

4.01    Claims and Equity Interests shall be entitled to vote on the Plan as follows:

| Class | Estimated Total Amount of Allowed Claims | Estimated Distribution | Recovery | Impairment | Entitled to Vote |
|---|---|---|---|---|---|
| Class 1 – Priority Non-Tax Claims | $20,000 | $20,000 | 100% | Unimpaired | No. Deemed to Accept. |
| Class 2 – Secured Claim of 55 Washington Street LLC | $ 0 | $ 0 | 100% | Unimpaired | No. Deemed to Accept. |
| Class 3 – Unsecured Claims | $3,000,000 | $150,000 - $450,000 | Estimated 5% - 15% | Impaired | Yes. |
| Class 4 – Equity Interests | N/A | $ 0 | 0% | Impaired | No. Deemed to Reject. |

4.02    Class 1 – Priority Non-Tax Claims. Except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Debtor agrees to a different treatment of such Claim, each holder of an Allowed Priority Non-Tax Claim shall receive the unpaid amount of its Allowed Priority Non-Tax Claim on the Effective Date, or as soon thereafter as is practicable in full satisfaction of such Claim.

4.03    Class 2 – Secured Claim of 55 Washington Street LLC.  Under the terms and conditions of the Asset Purchase Agreement, by and between the Debtor and Purchaser, the obligations of the Debtor to 55 Washington Street LLC will be assumed and assigned to Purchaser at closing.  Accordingly, Washington Street LLC will not receive any distribution under this Plan, but any amounts necessary to cure pre-petition monetary defaults will be paid by the Purchaser.

4.04    Class 3 - Unsecured Claims. The holders of Allowed Unsecured Claims shall receive their Pro Rata Share of all remaining Cash after payment in full of all Allowed Administrative Expense Claims, all Allowed Priority Tax Claims, all Priority Non-Tax Claims, and the Post-Confirmation Reserve, through multiple distributions, the first of which shall occur on or before sixty (60) days after the later of the closing of the Asset Purchase Agreement or the

Effective Date.  The Debtor estimates that $150,000 to $450,000 will be available for distribution to holders of Allowed General Unsecured Claims from the following sources:  (i) the proceeds from the Sale; (ii) the proceeds from the litigation pending against T-Mobile; and (iii) the proceeds from the Avoidance Actions.

4.05    Class 4 – Equity Interests. All Equity Interests issued by the Debtor shall survive entry of the Confirmation Order.  However, each holder of an Equity Interest shall neither receive nor retain any property or interest in Estate Property on account of such Equity Interest. Equity Interest holders are enjoined from taking actions detrimental to the liquidation of the Debtor's estate, taking actions contrary to the terms of the Plan, and taking actions that would impede the implementation of the provisions of the Plan in any way. Those holding Equity Interests are also enjoined from transferring such Equity Interests. In accordance with Section 7.07, all Equity Interests will be cancelled after the Plan has been fully implemented and the Debtor files the appropriate articles of dissolution.

## ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS

5.01    Liquidation Account.  On the Confirmation Date, or as soon thereafter as is reasonably practicable, the Debtor shall establish the Liquidation Account from which all distributions pursuant to this Plan shall be made.

5.02    Distribution Record Date. As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtor, or its agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests. The Debtor shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Distribution Record Date. The Debtor shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

5.03    Method of Distributions Under the Plan.

(a)    Effective Date Payments and Transfers by the Debtor. On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtor shall remit to holders of Allowed Claims the amounts as set forth in the Plan.

(b)    Distributions of Cash. Any Cash payment to be made hereunder shall be made by check.

(c)    Delivery of Distributions. Subject to Bankruptcy Rule 9010, unless otherwise provided in the Plan, all distributions to any holder of an Allowed Claim will be made to the holder of each Allowed Claim at the address of such holder as listed in the Schedules, or on the books and records of the Debtor or their agents unless the Debtor shall have been notified, in advance, in writing of a change of address, including, without limitation, by the timely filing of a proof of claim or interest by such holder that provides an address for such holder different from the address reflected in the Schedules or in the Debtor's books and records. In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder will

be made unless and until the Debtor has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution will be made to such holder; provided, however, that, such undeliverable distributions will be deemed unclaimed property under Section 347(b) of the Code at the expiration of 90 days after the date of the returned distribution, the distribution shall irrevocably revert to the Debtor's Estates and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Debtor and its Estate. The Debtor will have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Schedules and its books and records (including any proofs of claim filed against the Debtor).

(d)     Time Bar to Cash Payments. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. The holder of the Allowed Claim to whom such check originally was issued shall make requests for re-issuance of any check to the Debtor. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Debtor's Estate and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor and its Estate.

(e)     Minimum Distributions. No payment of Cash less than $25 shall be made by the Debtor. Any Estate Property that is not distributable in accordance with this Section 5.03(e) shall be distributed to a charitable organization exempt from federal income tax under Section 501(c)(3) of title 26 of the United States Code to be selected by the Debtor which shall in no way be related to the Debtor or any insider of the Debtor.

(f)     Post-Confirmation Rights and Obligations of the Debtor.

(1)     Following the Effective Date, the Debtor, through and under a chief liquidation officer to be identified in the Plan Supplement, shall conduct an orderly liquidation of the remaining Estate Property consistent with the terms of the Plan.

(2)     Except as otherwise expressly limited in the Plan, the Debtor shall have control and authority over the Estate Property, including, but not limited to, Avoidance Actions, Causes of Action, and deposit accounts, and over the management and disposition of the Estate Property (including the transfer of any Estate Property that does not constitute a disposition). Except as provided in the Plan, the Debtor need not obtain any court order or approval in the exercise of any power or discretion conferred under the Plan, or account to any court in the absence of a breach of fiduciary duty. The Debtor shall exercise its judgment for the benefit of the creditors in order to maximize the value of Estate Property, giving due regard to the cost, risk, and delay of any course of action. In connection with the management of the Debtor and use of the Estate Property, the Debtor's powers (except as otherwise expressly limited in the Plan) shall include taking the following actions:

i.     to pursue the liquidation and marshalling of the Estate Property and to preserve and protect the Estate Property;

ii. to reconcile, settle, or object to Claims against the Debtor and to prosecute, settle or abandon the Avoidance Actions and Causes of Action that are Estate Property against third parties;

iii. to make or cause to be made distributions of Cash in accordance with the terms of the Plan;

iv. to liquidate and distribute Estate Property or any portion of or interest in Estate Property, and to dispose of the Estate Property for Cash or on such terms and for such consideration as are reasonable and appropriate;

v. to enforce payment of notes or other obligations, including accounts receivable, owed to the Debtor;

vi. to purchase insurance with coverage and limits as it deems desirable, including, insurance covering liabilities of the Debtor or employees or agents of the Debtor incurred in connection with implementation of this Plan;

vii. subject to the requirements of the Plan, to appoint, engage, employ, supervise and compensate officers, employees, and other persons as may be necessary or desirable, including managers, consultants, accountants, technical, financial, or investment advisors or managers, attorneys, agents or brokers, corporate fiduciaries, or depositories, such Persons shall operate only at the direction of the Debtor;

viii. subject to the limitations in the Plan, to the extent reasonably required to meet claims and contingent liabilities (including Disputed Claims) or to maintain the value of Estate Property during liquidation, to invest and reinvest available Cash, pending distribution, and to liquidate such investments; provided, however, the Debtor shall not receive or retain Cash or Cash equivalents in excess of a reasonable amount necessary to meet claims and contingent liabilities (including Disputed Claims and Post-Confirmation Expenses) or to maintain the value of the Estate Property during liquidation;

ix. to establish the manner of ascertaining income and principal, and the apportionment of income and principal, and the apportionment between income and principal of all receipts and disbursements, and to select an annual accounting period;

x. establish funds and exercise control over, reserves and accounts, as deemed by the Debtor in its discretion to be useful in carrying out the purposes of the Plan;

xi. sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding;

xii. delegate any or all of the discretionary power and authority conferred with respect to all or any portion of the Estate Property to any one or

more reputable individuals or recognized institutional advisors or investment managers without liability for any action taken or omission made because of any such delegation except for such liability as is provided in the Plan;

xiii.    execute, deliver, and perform such other agreements and documents and to take or cause to be taken any and all such other actions as may be necessary or desirable to effectuate and carry out the purposes of the Plan;

xiv.    undertake any action necessary to maintain the corporate existence and/or dissolve the Debtor pursuant to applicable law;

xv.    undertake any action necessary to ensure that the Debtor is and remains in good standing and compliance with applicable federal, state, and local laws;

xvi.    file any federal, state, or local tax returns and provide for the payment of any related taxes;

xvii.    undertake any action or perform any obligation provided for or required under the Plan; and

xviii.    utilize Estate Property (including Cash and Cash equivalents) as necessary to implement the terms of the Plan and to carry out the Debtor's duties and responsibilities hereunder.

(3)    <u>Employment and Compensation of Professionals</u>. The Debtor shall have the authority to retain and compensate Benesch, Friedlander, Coplan & Aronoff LLP ("<u>BFCA</u>") as counsel to represent it in connection with its duties and responsibilities under the Plan. The Debtor shall also have the authority to retain and compensate such other attorneys, accountants, investment advisors, and other professionals as the Debtor may determine to be necessary or appropriate in carrying out the provisions of the Plan. All Persons employed by the Debtor shall operate only at its direction. The Debtor may pay the reasonable fees and expenses of such professionals without application to the Bankruptcy Court.

(4)    <u>Investment Guidelines</u>. Available Cash and other Cash held pending distribution, including Cash held in the Post-Confirmation Reserve, shall (to the extent permitted by applicable law) be invested by the Debtor in: (i) direct obligations of, or obligations guaranteed or secured by, the United States of America (including United States Treasury Bills); (ii) obligations of any agency or corporation that is or may subsequently be created by or pursuant to an Act of the United States Congress or its agencies or instrumentalities; or (iii) demand deposits or short-term certificates of deposit at any bank or trust company that has, at the time of the acquisition by the Debtor of such investments, capital stock and surplus aggregating at least $100 million and whose short-term debt obligations are rated by at least two nationally recognized statistical rating organizations in one of the two highest categories. Such investments shall mature in the amounts and at the times as, in the judgment of the Debtor, are necessary, or are desirable with a view to providing funds when needed to make payments from the Estate Property.

Any investment purchase with the Estate Property shall be deemed a part of the Estate Property. All interest, distributions, dividends and proceeds received by the Debtor in connection with such investments shall be a part of the Estate Property.

5.04    Withholding and Reporting Requirements. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

5.05    Setoffs. The Debtor may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any Claims of any nature whatsoever that the Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim the Debtor may have against the holder of such Claim.

5.06    Transactions on Business Days. If any date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.07    Disputed Claim means:

(a)    if no proof of claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or

(b)    a proof of claim or request for payment of an Administrative Expense Claim that has been filed by the applicable deadline that is disputed, contingent, and/or unliquidated to which a timely objection or request for estimation is interposed by the Debtor which has not been withdrawn or determined by a Final Order.

5.08    Objections to Claims. The Debtor shall be entitled to, and is empowered and authorized to, object to any and all Disputed Claims.

5.09    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is Allowed by a final non-appealable order.

5.10    Resolution of Disputed Claims. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the Debtor shall have the right to the exclusion of all others to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but

in no event later than sixty (60) days after the Effective Date. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Debtor elects to withdraw any such objection or the Debtor and the holder of a Claim elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.

5.11 <u>Estimation</u>. The Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to Section 502(c) of the Code regardless of whether the Debtor previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, pursuant to order of the Bankruptcy Court.

5.12 <u>Allowance of Disputed Claims</u>. If, on or after the Effective Date, any Disputed Claim becomes, in whole or in part, an Allowed Claim, the Debtor shall, no later than the fifteenth (15th) Business Day of the first month following the month in which the Disputed Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, distribute to the holder thereof the distributions, if any, that such holder would have received had its Claim been Allowed on the Effective Date, except as otherwise provided herein.

5.13 <u>Distributions to Holders of Allowed Claims Upon Disallowance of Disputed Claims</u>. Upon disallowance of any Disputed Claim, each holder of an Allowed Claim in the same Class as the disallowed Disputed Claim will be entitled to its Pro Rata Share of Cash equal to the distribution that would have been made in accordance with the Plan to the holder of such Disputed Claim had such Disputed Claim been an Allowed Claim on or prior to the Effective Date.  Such distributions on account of disallowed Disputed Claims will be made as soon as practicable after the thirtieth (30th) day following allowance or disallowance of the last Disputed Claim.  Upon allowance or disallowance of all or a portion of such Disputed Claims, Debtor will make appropriate distributions in accordance with the Plan.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 <u>Executory Contracts and Unexpired Leases</u>. All executory contracts and unexpired leases of the Debtor shall be deemed rejected by the Debtor as of the Effective Date, except for any executory contract or unexpired lease that: (a) has previously been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date, (b) is the subject of a pending motion to assume, assume and assign, or reject as of the Confirmation Date, or (c) is listed on the Schedule of Assumed Contracts, provided,

however, that the Debtor shall have the right, at any time prior to the Closing, to amend the Schedule of Assumed Contracts in any manner set forth in the Asset Purchase Agreement, the Sale Motion, the Bid Procedures Motion, or by any other means approved by the Court or to delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant to this Section 6.01 or to add any executory contract or unexpired lease thereto, thus providing for its assumption and assignment pursuant to this Section 6.01 and the terms of the Asset Purchase Agreement. The assumption, assumption and assignment, and rejection of executory leases and unexpired contracts under this Plan shall be governed by the terms of the Asset Purchase Agreement, the Sale Documents, the Sale Motion and Bid Procedures Motion, and other orders of the Court. The Debtor shall provide notice to the affected parties to a rejected contract and require that proofs of claim for rejection damages be filed with the Court within thirty days of the date of such notice.

6.02 <u>Cure of Defaults and Assurance of Performance for Assumed Contracts and Leases</u>. The cure of all defaults under executory contracts and unexpired leases to be assumed and assigned under the Asset Purchase Agreement, including the resolution of all objections to the adequacy of assurance of future performance under such contracts and leases and as to the adequacy of amounts proposed to cure defaults under such contracts and leases, shall be governed by the terms and conditions of the Sale Motion and Bid Procedures Motion, the Asset Purchase Agreement, the Sale Documents, and any order approving the Asset Purchase Agreement or authorizing the Sale, and other orders of the Court. All such cure amounts shall be satisfied by the Purchaser, and Purchaser shall further provide adequate assurance of performance with respect to all executory contracts and unexpired leases assumed and assigned to Purchaser, unless otherwise provided in the Asset Purchase Agreement.

6.03 <u>Approval of Rejection of Executory Contracts and Unexpired Leases</u>. Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365 of the Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date pursuant to the Plan.

6.04 <u>Rejection Claims</u>. In the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor or any property to be distributed under the Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtor on or before the date that is thirty (30) days after the Confirmation Date.

## ARTICLE VII
## <u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>

7.01 <u>The Sale</u>. The Sale Order authorizes a sale, free and clear of all Liens, claims and encumbrances, of all or substantially all of the Debtor's assets under sections 105, 363, and 365 of the Code under the terms and conditions of the Asset Purchase Agreement. Pursuant to the terms of the Sale Order, the Debtor shall be authorized to take any and all actions necessary to consummate the Sale. The Sale contemplates payment of $800,000 to the Debtor's estate by the Purchaser, in conjunction with assumption of certain pre and post petition liabilities up to

$600,000 (but not exceeding $400,000 at the time of closing).  The proceeds of the Sale shall be used to satisfy Claims in accordance with the Plan.

7.02    Other Sales.  The Confirmation Order shall authorize the Debtor to sell, free and clear of all Liens and encumbrances under sections 365, 1123(b)(4), 1129(b)(2)(A), 1145 and 1146(a) of the Code, any Excluded Assets.  All sales pursuant to this Section 7.02 for which the Debtor seeks to sell an Excluded Asset valued, in the Debtor's reasonable opinion, to be equal to or less than $50,000 shall be authorized by the Confirmation Order without further order of the Bankruptcy Court.  Sales of Excluded Assets valued, in the Debtor's reasonable opinion, in excess of $50,000 shall be authorized upon prior approval of the Bankruptcy Court.

7.03    Application of Sale Proceeds.  Proceeds of the Sale and any and all other sales of Estate Property pursuant to this Section shall be deposited into the Liquidation Account for distribution in accordance with this Plan.

7.04    Approval of Agreements.  The solicitation of votes on the Plan shall be deemed a solicitation of the holders of Claims for the approval of any Other Sales as set forth in Section 7.02.  Entry of the Confirmation Order shall constitute approval of such agreements and transactions and the Confirmation Order shall so provide.

7.05    Closing of Chapter 11 Cases by Charitable Gift. If at any time the Debtor determines that the expense of administering the Debtor's estate so as to make a final distribution to Allowed Claims is likely to exceed the value of the assets remaining in the estate, the Debtor shall file a notice with the Bankruptcy Court regarding its intention to (i) reserve any amounts necessary to close the chapter 11 case, (ii) donate any balance to a charitable organization exempt from federal income tax under Section 501(c)(3) of the Tax Code that is unrelated to the Debtor, or any insider of any the Debtor, to the knowledge of the Debtor, and (iii) close the chapter 11 case in accordance with the Code and Bankruptcy Rules.  Notice of such application shall be given, to the extent practicable, to those parties who have filed requests for notices and whose electronic addresses remain current and operating.  If no objection is filed with the Bankruptcy Court within thirty (30) days following the service of such notice, the Debtor shall take the actions contemplated in this Section 7.05 without further order of the Bankruptcy Court.

7.06    Release of Liens. Except as otherwise specifically provided in or contemplated by the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, (i) each holder of: (a) any purported Secured Claim; and/or (b) any judgment, personal property or ad valorem tax, mechanics' or similar Lien Claim, in each case regardless of whether such Claim is an Allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed shall: (i) turn over and release to the estate any and all property of any of the Debtor or its estate that secures or purportedly secures such Claim, or such Lien and/or Claim shall automatically, and without further action by such of the Debtor or its estate, be deemed released; and (ii) execute such documents and instruments as the Debtor requires to evidence the holder of a Claim's release of such property or Lien, and if such holder refuses to execute appropriate documents or instruments, the Debtor may, in its discretion, file a copy of the Confirmation Order in the appropriate recording office, which shall serve to release any holder of a Claim's rights in such

property. On the Effective Date, all right, title and interest in such property shall revert or be transferred to the Debtor free and clear of all Claims, interests, and Liens of any kind.

7.07    Cancellation of Existing Securities and Agreements. On the Effective Date, except as expressly provided in this Plan, all instruments evidencing a Claim shall be deemed cancelled without further act or action under any applicable agreement or Law, and the obligations of the Debtor under the agreements, instruments, trust indentures, certificates, or otherwise, governing such Claims and Equity Interests, as the case may be, shall be discharged. The Equity Interests in the Debtor shall be cancelled by the Debtor's filing of the appropriate articles of dissolution after the Plan has been fully implemented and administered, and after all Estate Property has been distributed as described in Section 4.05 hereof.

7.08    Debtor's Post-Confirmation Roles; Dissolution. The Debtor shall perform each of the following acts as soon as practicable on or after the Effective Date:

(a)    Payments and Transfers. On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtor shall make payments and transfers to holders of Allowed Claims to claimants in the manner set forth at Sections 3.01, 3.02, 3.03, 3.04, 4.02, 4.03, and 4.04 hereof, and in accordance with Article V hereof.

(b)    Administration of Taxes. The Debtor shall be responsible for all tax matters (but specifically excluding the payment thereof from proceeds other than proceeds of the Estate) of the Debtor until certificates of cancellation or dissolution shall have been filed in accordance with Section 7.08(d) hereof.

(c)    Claims Administration and Prosecution and Plan Distributions. The Debtor shall have the power and authority to prosecute and resolve objections to any and all Disputed Claims (including without limitation those filed by the Debtor prior to the Effective Date). The Debtor shall also continue to have the power and authority to hold, manage, and distribute Plan distributions to the holders of Allowed Claims consistent with applicable provisions of this Plan.

(d)    Dissolution. Within thirty (30) days after its completion of the acts required by the Plan, or as soon thereafter as is reasonably practicable, the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor; provided, however, that the Debtor shall file with the office of the Secretary of State in the Debtor's state of organization, a certificate of cancellation or dissolution. No approval of the shareholders or directors of the Debtor shall be required for filing of the articles of dissolution.

(e)    Final Report. On filing the articles of dissolution, the Debtor shall file with the Bankruptcy Court and serve on the United States Trustee a final report containing the following information: (i) a list of all Estate Property and funds of the Debtor originally charged under the Debtor's control pursuant to this Plan; (ii) a summarized accounting, in sufficient detail, of all purchases, sales, gains, losses, and income in connection with the liquidation and distribution of the Estate Property during the Debtor's term of service in implementing the Plan; and (iii) any ending balance of all assets and funds of the Debtor as of the date of the final report.

(f)     Discharge of Debtor. The Debtor shall be discharged from all liability to the estate, holders of Equity Interests, and holders of Claims, or any other person or entity that has had or may have an interest in the Debtor for acts or omissions in the Debtor's capacity as the Debtor or in any other capacity contemplated by the Plan upon entry of the final report.

(g)     Books and Records. The Debtor shall have the responsibility of storing and maintaining books and records until one year after the Effective Date, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order. For purposes of this Section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties and all of the claims and rights of the Debtor in and to their books and records, wherever located.

(h)     Corporate Action. Upon the Effective Date, the Debtor shall perform each of the actions and effect each of the transfers required by the terms of the Plan, in the time period allocated therefore, and all matters provided for under the Plan that would otherwise require approval of the stockholders, directors, or comparable governing bodies of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the state in which the Debtor is incorporated or organized, without any requirement of further action by the stockholders or directors (or other governing body) of the Debtor. The Debtor shall be authorized and directed, following the completion of all disbursements, other transfers, and other actions required of the Debtor by the Plan, to file a certificate of cancellation or dissolution as contemplated by Section 7.08(d) hereof for the Debtor. The filing of such certificate of cancellation or dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including, without express or implied limitation, any action by the stockholders or directors (or other governing body) of the Debtor.

(i)     Effectuating Documents and Further Transactions. The Debtor is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE VIII
## EFFECTIVENESS OF THE PLAN

8.01     Condition Precedent to Confirmation of Plan. The following are conditions precedent to the confirmation of the Plan:

(a)     The Bankruptcy Court shall have approved by Final Order the Disclosure Statement with respect to this Plan, in form and substance satisfactory to the Debtor; and

(b)     The Confirmation Order shall have been entered by the Court and shall have become a Final Order, all in form and substance reasonably acceptable to the Debtor.

8.02　Conditions Precedent to Effective Date. The following are conditions precedent to the Effective Date of the Plan:

(a)　No stay of the Confirmation Order shall then be in effect;

(b)　A closing under the Asset Purchase Agreement shall have occurred;

(c)　All transactions contemplated in the Asset Purchase Agreement have been consummated;

(d)　The Debtor shall have sufficient Cash to pay the sum of (i) Allowed Administrative Expense Claims and the Allowed Priority Tax Claims, and (ii) an amount that would be required to distribute to the holders of Disputed Administrative Expense Claims and Disputed Priority Tax Claims if all such Claims are subsequently Allowed, as set forth more fully in Article V hereof;

(e)　All other actions, documents, agreements and instruments necessary to implement the Plan shall have been received, recorded, executed, and/or delivered.

8.03　Satisfaction of Conditions. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Debtor decides that one of the conditions precedent set forth in Section 8.02 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

8.04　Effect of Nonoccurrence of Conditions to Effective Date. If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or duly waived on or before June 30, 2011, the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated pursuant to this Section 8.04, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims against the Debtor.

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.01　Vesting of Assets.

(a)　As of the Effective Date, title to all Estate Property shall vest in the Debtor, subject to the Debtor's obligation to administer, liquidate, and distribute the property in accordance with the terms of this Plan.

(b)　As of the Effective Date, all assets of the Debtor shall be free and clear of all Claims, except as provided in the Plan or the Confirmation Order.

9.02　Release of Assets. Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtor and its assets and properties. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matter set forth in Article IX hereof.

9.03    Binding Effect. Except as otherwise provided in Section 1141(d)(3) of the Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

9.04    Term of Injunctions or Stays. Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the chapter 11 case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

9.05    Litigation, Objections to Claims, and Avoidance Actions. Except as otherwise provided in the Plan, on and after the Effective Date, the Debtor and on behalf of the estate and the creditors, will have the right to enforce and pursue any and all Claim objections, Avoidance Actions, and Litigation against any person. The Debtor may pursue, abandon, settle, or release any or all Claim objections, Avoidance Actions, and Litigation as it deems appropriate, subject to approval of the Bankruptcy Court. Debtor may, in its sole discretion, offset any such claim held against a person, against any payment due such person under the Plan, provided, however, that any claims of the Debtor arising before the Petition Date shall first be offset against Claims against the Debtor arising before the Petition Date. Settlements of all Claims objections, Avoidance Actions, and Litigation are subject to prior approval of the Bankruptcy Court.

9.06    Injunction. On and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of or respecting any Claim or Cause of Action of the Debtor for which the Debtor retains sole and exclusive authority to pursue in accordance with the Plan.

9.07    Injunction Against Interference with Plan. Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present, future, or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

9.08    Retention and Preservation of Claim Objections, Avoidance Actions, and Litigation: Pursuant to section 1123(b)(3)(B) of the Code, upon entry of the Confirmation Order, the Debtor's right to object to all Claims and Equity Interests asserted against them and all of the Debtor's Avoidance Actions and Litigation, including without limitation: (1) preference actions under to section 547 of the Code against, but not limited to, the potential defendants listed in an exhibit to the Plan Supplement; (2) recovery actions under Section 542 of the Code; (3) all Claims listed on an exhibit to the Plan Supplement; (4) all Claims, Avoidance Actions, and Litigation disclosed in the Debtor' Schedules and Statement of Financial Affairs, which are incorporated herein by reference; and (5) any and all other Claims, Avoidance Actions, and Litigation that the Debtor held prior to the Confirmation Date, including, but not limited to, Claims for unpaid accounts receivable and fraudulent transfer, shall vest in the Debtor for prosecution pursuant to this Plan.

9.09    Unless a Claim, Avoidance Action, or Litigation against a Creditor or other entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor expressly reserves such Claim, Avoidance Action, or Litigation for later adjudication by the Debtor (including without limitation, Claims, Avoidance Actions, and Litigation not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Claims, Avoidance Actions, or Litigation upon or after the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Claims, Avoidance Actions, or Litigation have been expressly released in the Plan or any other Final Order.

9.10    <u>No Discharge of Debtor</u>. In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

**ARTICLE IX**
**<u>RETENTION OF JURISDICTION</u>**

9.11    <u>Jurisdiction of Bankruptcy Court</u>. The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the chapter 11 cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)    To hear and determine motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)    To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding to recover a Litigation or an Avoidance Action and to hear any motion seeking to resolve any compromise or resolution of any of the foregoing;

(c)    To issue orders as may be necessary to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)    To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)　To hear and determine any application to modify the Plan in accordance with section 1127 of the Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)　To hear and determine all applications under sections 330, 331, and 503(b) of the Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i)　To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)　To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)　To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(l)　To recover all assets of any of the Debtor's property, wherever located;

(m)　To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)　To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, without limitation, matters with respect to any taxes payable by a trust or reserve established in furtherance of the Plan);

(o)　To hear and determine any other matters related hereto and not inconsistent with the Code and title 28 of the United States Code; and

(p)　To enter a final decree closing the chapter 11 case.

## ARTICLE X
## <u>ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN</u>

10.01  <u>Acceptance by Impaired Classes of Claims</u>.  Pursuant to section 1126(c) of the Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the holders of such Allowed Claims actually voting in such Class (other than Claims held by any holder designated pursuant to section 1126(e) of the Code) have timely and properly voted to

accept the Plan. No Class of Equity Interests is entitled to vote on the Plan pursuant to section 1126 of the Bankruptcy Code.

10.02   Voting Classes.  Except as otherwise required by the Code or the Bankruptcy Rules or as otherwise provided in this Section 10.02, the holders of Claims in Class 3 shall be entitled to vote to accept or reject the Plan in accordance with Section 10.03 of the Plan. Classes of Claims Unimpaired under the Plan shall not be entitled to vote to accept or reject the Plan, and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Class of Equity Interests whose holders neither receive nor retain any property on account of such Equity Interests and under the Plan shall not be entitled to vote to accept or reject the Plan and shall be conclusively deemed to have rejected the Plan.

10.03   Ballot Instructions. Each Holder of a Claim entitled to vote on the Plan will be asked to complete and return a Ballot to the Debtor, which will compile the votes so received. Any questions as to the validity, form, and eligibility (including time of receipt) of Ballots will be resolved by the Bankruptcy Court upon application or at the Confirmation Hearing.

10.04   Cramdown. If any impaired class votes to accept the Plan by the requisite statutory majorities provided in sections 1126(c) and 1126(d) of the Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right to undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Code and/or amend the Plan in accordance with Section 11.08 hereof to the extent necessary to obtain entry of a Confirmation Order.

## ARTICLE XI
## GENERAL PROVISIONS

11.01   Definitions and Rules of ConstructionThe definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan and not otherwise defined.  Unless otherwise specified, all sections or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.

11.02   Effective Date of Plan.  The Effective Date of this Plan is the fifteenth (15th) day following the later of the Closing or the entry of the Confirmation Order, but if a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

11.03   Substantial Consummation.  Upon the later of the following to occur: (i) closing of the Asset Purchase Agreement and (ii) the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

11.04  Standard of Care.  The Debtor, acting in its capacity under the Plan, shall not be personally liable in connection with any action in furtherance of the liquidation of the Debtor and the Estate Property or to any person or entity, except for such acts or omissions constituting fraud, willful misconduct, or gross negligence. The Debtor shall not be personally liable to any holder of Claims or Equity Interests, or any person or entity for the acts or omissions of any employee or agent of the Debtor, unless the Debtor acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee or agent.

11.05  Reliance by Debtor.  The Debtor may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Debtor has no reason to believe is not genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Debtor may conclusively rely as to the truth of the statements and correctness of the opinions expressed in such documents; provided, however, the Debtor shall be under a duty to examine, or cause to be examined, the above-referenced documents to determine whether such documents conform to the requirements of the Plan. The Debtor may consult with counsel, and any opinion of counsel shall be full and complete authorization and protection regarding any action taken or suffered by the Debtor in accordance with such opinion. The Debtor shall have the right at any time to seek instructions from the Bankruptcy Court (or any other court of competent jurisdiction after the chapter 11 case is finally closed) concerning the Estate Property, the Plan, or any other document executed in connection therewith, and those instructions shall be full and complete authorization regarding any action taken or suffered by the Debtor in accordance with those instructions.

11.06  Modification of Plan.  The Plan may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

11.07  Revocation or Withdrawal of Plan.  The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Debtor takes such action, the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

11.08  Courts of Competent Jurisdiction.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no

effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

11.09  Severability.  If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.10  Governing Law.  Except to the extent the Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the state of New York, without giving effect to the principles of conflicts of law thereof.

11.11  Exhibits.  All exhibits to the Plan whether filed contemporaneously herewith or as some future date are incorporated into and are a part of the Plan as if set forth in full herein.

11.12  Successors and Assigns.  All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

11.13  Time.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

11.14  Notices.  All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Raymond H. Lemisch, Esq.                          Michael J. Barrie, Esq.
Benesch Friedlander Coplan & Aronoff LLP          Benesch Friedlander Coplan & Aronoff LLP
White Plains Center                               222 Delaware Avenue, Suite 801
50 Main Street, Suite 1000                        Wilmington, Delaware 19801
White Plains, NY 10606                            (302) 442-7068 (Telephone)
                                                  (302) 442-7012 (Facsimile)

11.15  Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

11.16  Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

11.17  Corporate Governance.  On the Effective Date, the corporate charter of the Debtor shall be deemed amended to prohibit the issuance of non-voting equity securities in compliance with section 1123(a)(6) of the Code.

Dated:  January 28, 2011                    Respectfully submitted,


                                            By:  /s/ *Paul Butler*
                                                  Paul Butler, Chief Operating Officer of the Debtor

                                            By:  /s/ *Michael J. Barrie, Esq.*
                                                  Counsel for the Debtor